```
Ron Johnson (PRO SE)

484 Lake Park Avenue #224
Oakland, CA. 94610
Telephone #(510) 395-7359
Email: ericaminc@gmail.net
```

**United States District Court**
**NORTHERN DISTRICT**

FILED
JUN - 7 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Case No.: **C10-02505**

RON JOHNSON

      Plaintiff,

  vs.

BRITISH PUTROLEUM OF AMMERICA

(B.P OF AMERICA),

      Defendant

COMPLAINT FOR PERSONAL INJURY
1. ANTITRUST
2. Negligence

Dated this June 7, 2010

484 Lake Park Avenue #224
Oakland, CA. 94610
Ron Johnson (Pro Se)

[Summary of pleading] - 1

CO.44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

Ron Johnson, a resident of Oakland,CA., principle in ERICAM ENVIRONMENTAL, LLC, a California limited liability company, principle place business in Oakland,CA., is bringing suit against, British Petroleum of America a corporation with its principle place of business in Houston, TX. Plaintiff is bringing an anti-trust suit for the right to assist in oil containment and recovery in the gulf of Mexico for the following reasons:

1. Plaintiff alleges defendant with willfully and intentionally mislead and concealed facts to the American government, the President of the United States and the American public about the Deep Water Horizon oil spill, clean up and recovery.

2. Plaintiff alleges defendant was fully aware of and refused the assistance provided by plaintiffs, of an existing marine oil containment system that had been tested and certified to by the United States government, (Minerals Management Stewardship)at Ohmsett, the National Oil Spill Testing Facility in Leonardo, NJ.

3. Plaintiff alleges defendant willfully and intentionally misquoted the actual amount of oil arising from defendant's damaged oil rig. Due to the continuing negligence in the operation of the remediation of this oil that is spreading across the Gulf of Mexico waters and coastal shorelines, causing total destruction of the wetlands, fish and wildlife with, complete hardship for the people of the states adjacent to the Gulf waters , along with future undetermined damage to the fish industry as well.

4. Plaintiff alleges defendant has been aware of this system for over 9 years and has been offered assistance by plaintiffs, but refused the use of said system in clean up on 4 different oil spills clean up occasions, including Deep Water Horizon.

5. Plaintiff alleges defendant with willfully and mistrustfully contracted with defendant's sub-company to spray overhead and discharged underwater, an extremely high toxic disbursements fully knowing its harming potential, without any regards to the cause and long term effects it will have on fish, wildlife and human life.

6. Plaintiff alleges defendant has intentionally discriminated against plaintiff in order to maintain a monopoly to the selected few companies, on the grounds of assuring that said product will never be seen or used in the oil recovery industry.

Wherefore, plaintiff prays for the following relief:

(A) Two Hundred Million Dollars U.S ($200,000,000.00) in compensatory damages

(B) Defendant being enjoined from discriminating against plaintiff in the future.

(C) Defendant reimburse plaintiff for all court cost.

Exhibits: A. Government Seal from approving agency
B. Test Summary- National Oil Spill Testing Facility (Ohmsett)
C. photograph of oil containment system



*OHMSETT*

*NATIONAL OIL SPILL RESPONSE TEST FACILITY*

Test Summary of SAK-J5
At Ohmsett (10/13/99)

Two tests were performed on the prototype SAK-J5 containment boom at Ohmsett. The current configuration of the SAK-J5 by design has a 6-foot draft and 6 feet of freeboard. It is equipped with outboard foam floatation, which provides stability to the freeboard material as well as buoyancy to the containment boom. Weights located at the skirt bottom provided the necessary ballast to maintain the skirt in a position perpendicular to the water surface. Boom sections were added and removed using the zipper type connection located on the end of each of the three 15-foot sections.

The first test was performed to determine the maximum speed at which the SAK-J5 could be towed. Three sections (45 feet) were configured in a straight line between the Main and Auxiliary Bridges. The bridges were accelerated up to 2 knots and maintained this speed without causing damage to the containment boom.

The second test performed, determined the containment capabilities in calm water as well as in harbor chop waves. The SAK-J5 was configured into a circular area 10 feet in diameter. While stationary, 1200 gallons of Calsol test oil (nominal viscosity 200 cPs @ 68 degrees F) was pumped into the containment boom. The boom was observed for losses. An unquantifiable amount escaped through the end connector (less than 1 gallon) over a fifteen-minute period. A harbor chop wave condition was then generated with a nominal $H1/3$ value of 12 inches. The containment boom demonstrated wave conformance (ability to follow waves) and maintained its freeboard and draft. The oil preload depth was 2 feet (calculated) from which no oil was observed being lost from above or below the boom. The oil was then recovered using a Ohmsett provided Desmi Terminator weir skimmer in which approximately 100% of the oil was recovered.

/slc
cc: W. Schmidt



*MAILING ADDRESS: MAR, INC. P.O. BOX 473 ATLANTIC HIGHLANDS, NJ 07716*
*TELEPHONE NUMBER: (732) 866-7183       FAX NUMBER (732) 866-7189*
*E-MAIL: WILLIAM SCHMIDT, PROGRAM MANAGER <OHMSETTNJ@MONMOUTH.COM>*



